UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-271-F

| | | |
|---|---|---|
| ROSA H. JOHNSON, | ) | |
| EDGAR W. JOHNSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| BAC HOME LOANS SERVICING, LP FKA | ) | |
| COUNTRYWIDE HOME LOANS SERVICING | ) | |
| LP, THE LAW FIRM OF HUTCHENS, | ) | |
| SENTER & BRITTON, P.A., SUBSTITUTE | ) | |
| TRUSTEE SERVICES, INC., DEBORAH N. | ) | |
| HOOKER, C.T. SALYER, JOHN A. | ) | |
| MUNDULAK, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendant Substitute Trustee Services, Inc. [DE-61], the Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendant The Law Firm of Hutchens, Senter & Britton, P.A. [DE-62], the Motion to Dismiss the Amended Complaint pursuant to 12(b)(5) filed by Defendants Deborah N. Hooker and John A. Mandulak [DE-71], the Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendants Deborah N. Hooker, C.T. Salyer and John A. Mandulak [DE-73] and the Motion to Dismiss the Counterclaim of Defendant BAC Home Loans Servicing, LP pursuant to 12(b)(6) filed by Plaintiffs Rosa H. Johnson and Edgar W. Johnson [DE-80]. All briefing, responses and replies are complete. Accordingly, the motions are ripe for ruling.

## I. PROCEDURAL HISTORY

Plaintiffs Rosa H. Johnson and Edgar W. Johnson ("Plaintiffs" or "the Johnsons"), proceeding *pro se*, initiated this action by Complaint [DE-1] filed July 2, 2010. On September 27, 2010, Plaintiffs filed an Amended Complaint [DE-53], alleging six counts. Count I alleges a violation of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq*. The remaining counts recite the following state law claims: breach of contract (Count II), breach of implied duty of good faith (Count III), breach of fiduciary duty (Count IV), and violations of the North Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. § 45-90 *et seq*. (Count V), and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. (Count VI). Plaintiff alleges the claims arise out of "improprieties surrounding the servicing of a note and deed of trust secured by real property purchased by Plaintiffs," which eventually resulted in Plaintiffs' property being sold at a foreclosure sale. Amend. Compl. ¶¶ 1, 4 [DE-53]. The court's jurisdiction over Plaintiffs' FDCPA claim arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

On February 11, 2011, Defendants The Law Firm of Hutchens, Senter & Britton, P.A. ("HSB") and Substitute Trustee Services, Inc., ("STS") each filed an Answer [DE-59, DE-60], both of which were amended on February 14, 2011 [DE-63, DE-64]. Also on February 14, 2011, both Defendants HSB and STS filed motions to dismiss [DE-61, DE-62]. On March 10, 2011, Plaintiffs filed a joint response [DE-68] to both motions to dismiss.

On March 16, 2011, Defendant BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC") filed an Answer and Counterclaim [DE-69] for residential mortgage fraud in violation of the North Carolina Residential Mortgage Fraud Act ("RMFA"), N.C. Gen. Stat.

2

§ 14-118.12, to which Plaintiffs subsequently filed an Answer and Motion to Dismiss [DE-80].

Defendant C.T. Salyer ("Salyer") filed an Answer [DE-70] on March 16, 2011. On March 17, 2011,

Defendants Deborah N. Hooker ("Hooker"), Salyer and John A. Mundulak ("Mundulak")

(collectively, "the Individual Defendants") filed a motion to dismiss pursuant to 12(b)(6) [DE-73].

That same day, Defendants Hooker and Mundulak filed a motion to dismiss pursuant to 12(b)(5)

[DE-71]. On April 12, 2011, Plaintiffs filed responses [DE-78, DE-79] to the motions filed by the

Individual Defendants and an Answer to Defendant BAC's counterclaim and a motion to dismiss

[DE-80].

## II. FACTUAL BACKGROUND

As is proper when considering a motion to dismiss, this court will consider the facts in a light

most favorable to Plaintiffs.[1]   According to the allegations in the amended complaint, in 2001,

---

[1] Ordinarily, on a motion to dismiss, the court may not consider any documents that are outside the complaint unless the motion is converted into one for summary judgment. FED. R. CIV. P. 12(d). The court is not limited to the four corners of the complaint, however. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004). In particular, courts have made narrow exceptions for "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006); *Feldman v. Law Enforcement Assocs. Corp.*, No. 5:10-CV-08-BR, _ F. Supp. 2d _, 2011 U.S. Dist. LEXIS 24994, at *30 n.8, 2011 WL 891447, at *25 (E.D.N.C. Mar. 10, 2011) (noting a court may consider "documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned") (citing 5B Wright & Miller, Federal Practice & Procedure § 1357). Matters of public record, in this context, have been understood to include "copies of pleadings and other materials filed in other courts." *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995). *See, e.g., Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) (finding consideration of the pleadings and opinions from prior proceedings did not require the district court to convert the defendant's motion to dismiss into one for summary judgment because "to resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint") (internal quotation marks and alteration marks omitted)).

Accordingly, the court has derived the facts controlling its analysis of the motions to dismiss

Plaintiffs executed a note evidencing a loan, the amount of which is not alleged, for the benefit of Countrywide Home Loans, Inc. ("Countrywide"), which was secured by a deed of trust on 2803 Red Valley Dr., Rougemont, North Carolina ("the property").[2] Am. Compl. ¶¶ 1, 20; STS Am. Ans., Exs. D, K [DE-64.5, 64.12]. Thereafter, Bank of America ("BOA") purchased Countrywide and BOA's subsidiary, Defendant BAC, became the servicer of the note. Am. Compl. ¶ 20. According to Plaintiffs, during the transition from Countrywide to Bank of America, Defendant BAC did not apply a mortgage payment to Plaintiffs' account, causing the account "to appear one month deficient," and refused to assist Plaintiffs in resolving the issue regarding the lost payment. Id. ¶ 24. Subsequently, Defendant BAC returned two loan payments in February and April 2010. Id. At some point, Defendant BAC advised Plaintiffs that a payment in the amount of $3,181.09 would cure any deficiency and return Plaintiffs' mortgage "to regular servicing." Id. Plaintiffs submitted a check in the requested amount; however, Defendant BAC returned the payment to Plaintiffs and in February 2010, Defendant BAC initiated foreclosure proceedings against Plaintiffs. Id. ¶¶ 24-25, 27. Defendant BAC did not offer Plaintiffs "loss mitigation" or "pre-foreclosure" services and did not consider whether Plaintiffs qualified for a loan modification under the federal Home Affordable Modification Program ("HAMP). Id. Defendant STS served as the trustee handling the foreclosure

by Defendant HSB, Defendant STS and the Individual Defendants from Plaintiffs' Amended Complaint, as well as the recorded documents from Durham County Register of Deeds [DE-64.5] and the state court pleadings from the foreclosure action [DE-64.11, 64.12, 64.15] brought by Defendant STS against Plaintiffs, copies of which were attached to the Amended Answer of Defendant STS. Although filings by Defendant STS and the Individual Defendants include additional materials and affidavits, these documents may not be considered at this procedural stage as they do not fall within the narrow exceptions discussed above.

[2] While Plaintiffs allege that they executed the promissory note and deed of trust in 2003, the state court special proceeding filings indicate the note and deed of trust were executed in 2001. *See* STS Am. Ans., Exs. K, O [DE-64.12, 64-16].

4

proceedings and was represented by Defendant HSB *Id.* ¶ 4. The Individual Defendants "were personally involved in handling the foreclosure proceedings in connection with Plaintiffs' property." *Id.* ¶ 5.

On May 11, 2010, Defendant STS filed a special proceeding in Durham County for foreclosure of Plaintiffs' deed of trust. STS Am. Ans., Ex. J [DE-64.11]. On May 13, 2010, Defendant HSB, on behalf of Defendant STS, filed a "Notice of Hearing Prior to Foreclosure of Deed of Trust." STS Am. Ans., Ex. K [DE-64.12]. Plaintiffs allege, however, that they "did not receive the statutorily required information" prior to the foreclosure hearing, including the foreclosure hearing notice. Am. Compl. ¶ 28. On June 16, 2010, the Clerk of Superior Court for Durham County held a foreclosure hearing for the Deed of Trust. STS Am. Ans., Ex. N [DE-64.15]. At the hearing, the Clerk entered an order allowing the foreclosure sale which included the following findings of fact:

(1) BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP is the holder of the note sought to be foreclosed and it evidences a valid debt owed by Rosa H. Johnson.

(2) That said note is now in default and the instrument securing said debt gives the note holder the right to foreclose under a power of sale.

(3) That notice of this hearing has been served on the record owners of the real estate and to all other persons against whom the note holder intends to assert liability for the debt.

(4) That the debtors have shown no valid legal reason why foreclosure should not commence.

(5) [] The underlying mortgage debt is not a subprime loan as defined in G.S. 45-101(4).
    . . .

STS Am. Ans., Ex. N [DE-64.15]. At the time of the June 2010 foreclosure hearing, Plaintiffs' loan

was "at least 60 days delinquent." Am. Compl. ¶ 18. Plaintiffs allege that the foreclosure hearing was not conducted as required under North Carolina law in that "there was no evidence presented at the hearing as to prove the owner and holder of the note." Am. Compl. ¶ 29.

Based on the foregoing, Plaintiffs allege the following claims against Defendant BAC: breach of contract, breach of implied duty of good faith and violations of the North Carolina Mortgage Debt Collection and Servicing Act and the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiffs allege the remaining defendants (collectively, the "FDCPA Defendants"), by handling the foreclosure proceedings, violated the FDCPA and breached a fiduciary duty owed Plaintiffs.

### III. RULE 12(B)(5) MOTION TO DISMISS

Defendants Hooker and Mundulak contend they have not been "served personally with the Summons and Complaint, nor did any sign the certified mail receipt for service." Individual Defs.' Mem. at 3 [DE-72]. These defendants contend further that "Plaintiffs failed to follow explicit Orders of this Court in regards to effecting service of Plaintiffs' Amended Complaint" on them. *Id.* at 4. Plaintiffs counter that they served Defendants Hooker and Mundulak by sending the summons and amended complaint to the dwellings of both defendants via certified mail, and alternatively, by overnight delivery service and regular U.S. mail. Pls.' Resp. at 2 [DE-78]. Plaintiffs counter further that Defendants Hooker and Mundulak "obstructed [] Plaintiff[s] in fulfilling the service condition set forth [in this court's order dated January 21, 2011]" by "allow[ing] their certified mail to go unclaimed." *Id.*

### A.    Standard of Review

A plaintiff bears the burden of showing that service of process complies with the requirements set forth in Rule 4 of the Federal Rules of Civil Procedure. *Elkins v. Broome*, 213

6

F.R.D. 273, 275 (M.D.N.C. 2003). The Fourth Circuit has counseled:

> When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.

*Armco, Inc., v. Penrod-Stauffer Bldg. Sys, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Rule 4 of the

Federal Rules of Civil Procedure dictates the manner in which a plaintiff may serve defendants.

Rule 4(e) provides that service of an individual may be made by:

    (1)    following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    (2)    doing any of the following:

        (A)    delivering a copy of the summons and of the complaint to the individual personally;

        (B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

        (C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). North Carolina's requirements for service of process are virtually identical for

all practical purposes with the above requirements but also provide that a plaintiff may serve an

individual by registered or certified mail, or by depositing the summons and complaint with a

designated delivery service, return receipt requested and delivering to the addressee. N.C. Gen. Stat.

§ 1A-1, Rule 4(j)(1)(c).

**B.  Service on Defendants Hooker and Mundulak**

    Defendants Hooker and Mundulak contend they have not been "served personally with the

Summons and Complaint, nor did any sign the certified mail receipt for service." Individual Defs.'

Mem. at 3 [DE-72]. These defendants contend further that "Plaintiffs failed to follow explicit Orders

7

of this Court in regards to effecting service of Plaintiffs' Amended Complaint" on them. *Id.* at 4. Plaintiffs counter that they served Defendants Hooker and Mundulak by sending the summons and amended complaint to the dwellings of both defendants via certified mail, and alternatively, by overnight delivery service and regular U.S. mail. Pls.' Resp. at 2 [DE-78]. Plaintiffs' counter further that Defendants Hooker and Mundulak "obstructed [] Plaintiff[s] in fulfilling the service condition set forth in [in this court's order dated January 21, 2011]" by "allow[ing] their certified mail to go unclaimed." *Id.*

In the court's January order, the court found that in sending the summons and complaint to the address of Defendant HSB, a law firm, Plaintiffs failed to properly effect service of process on the Individual Defendants. The court, however, extended the time for effecting service of process on the Individual Defendants until March 1, 2011 and alerted Plaintiffs to the proper rule containing instructions for doing so.[3] [DE-58]. The record indicates Plaintiffs obtained a reissued summons for Defendants Hooker and Mundulak on February 16, 2011 and on February 23, 2011, sent the reissued summons and amended complaint via certified mail to the dwellings of Defendants Hooker and Mundulak, as provided under North Carolina Rule of Civil Procedure 4(j)(1). [DE-78.1 at 2, 4].

"[W]hen service of process gives a defendant actual notice of the pending action, the courts may construe the Federal Rules of Civil Procedure liberally 'to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits.'" *Bess v. County of Cumberland*, No: 5:10-CV-453-BR, 2011 U.S. Dist. LEXIS 81032, at*6-7, 2011 WL 3055289, at *2 (E.D.N.C. July 25, 2011) (quoting *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)).

---

[3] The record shows Plaintiffs obtained service on Defendant Salyer. *See* [DE-78.1 at 2].

Here, Defendants Hooker and Mundulak do not deny that they had notice of this action nor do they contest that Plaintiffs had the correct dwelling addresses for the them. It is clear that Plaintiffs attempted to serve Defendants Hooker and Mundulak by certified mail in a timely manner but were ultimately unsuccessful due to their failure to claim the certified mail. The court concludes that dismissal for lack of personal jurisdiction due to insufficiency of service of process is not warranted under these circumstances. *See Bess*, 2011 U.S. Dist. LEXIS 81032, at *7, 2011 WL 3055289, at *2 (denying motion to dismiss for lack of personal jurisdiction due to insufficiency of service of process where defendant did not deny that it had notice of the action nor identify any prejudice that had arisen from any alleged technical defect in service and noting *pro se* litigants should be granted "a certain amount of lenity that is not afforded to represented parties") (quoting *McCreary v. Vaughan-Bassett Furniture Co.*, 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005)).

## IV. FDCPA DEFENDANTS' RULE 12(B)(6) MOTIONS TO DISMISS

### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

9

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, __ U.S.__, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

The standard for evaluating the sufficiency of the pleading in the instant case is particularly flexible because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court is not required to accept a *pro se* plaintiff's contentions as true, *Denton*, 504 U.S. at 32, and cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which

a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

## B.    Claims under the FDCPA

Plaintiffs invoke federal question jurisdiction based solely on a FDCPA claim as a ground for the court's exercise of subject matter jurisdiction over this lawsuit. In the amended complaint, Plaintiffs contend the FDCPA Defendants violated sections 1692d, 1692e, 1692f and 1692g of the FDCPA. Am. Compl. ¶ 32. The FDCPA Defendants argue that Plaintiffs' FDCPA claim is not properly pled and should be dismissed for failure to state a claim under Rule 12(b)(6). [DE-61, DE-62, DE-73].

Congress established the FDCPA to "eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). Specifically, the FDCPA prohibits, *inter alia*, the use of any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive or misleading representations or means, 15 U.S.C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt, and requires a debt collector to provide a validation notice, 15 U.S.C. § 1692g. The FDCPA creates a private cause of action against debt collectors who violate its provisions. *See* 15 U.S.C. § 1692k.

To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005) (citing *Fuller v. Becker & Poliakoff*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002)). The standard of review for evaluating FDCPA claims is that of the "least sophisticated debtor." *Chaudhry v. Gallerizzo*, 174

11

F.3d 394 (4th Cir. 1999). "Although naive, the least sophisticated debtor is not 'tied to the very last rung of the intelligence or sophistication ladder.'" *Beasley v. Sessoms & Rogers*, No. 5:09-CV-43-D, 2010 U.S. Dist. LEXIS 52010, at *10, 2010 WL 1980083, at *4 (E.D.N.C. March 1, 2010) (quoting *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). *See Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (concluding that the least sophisticated debtor "isn't a dimwit").

1.    Consumer Debt

Consumer debt is defined as an obligation to pay money arising from a transaction whose subject (e.g., property) is primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Here, Plaintiffs allege they are debtors on a home loan secured by a deed of trust. Am. Compl. ¶¶ 20, 25.

Defendant HSB and the Individual Defendants apparently do not dispute this element as their memoranda provide no discussion of it.[4] Regardless, the Fourth Circuit has held that the enforcement of a security interest through foreclosure falls within the parameters of the FDCPA. *See Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376 (4th Cir. 2006) (holding default on a note secured by a deed of trust is a consumer debt and concluding otherwise "would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt") (citations omitted).[5] Here, Plaintiffs allege they were "at least 60 days delinquent" on a note secured

---

[4] Notably, the court does not know the position of Defendant STS as to any element of Plaintiffs' *prima facie* case as it did not file a memorandum in support of its motion to dismiss. *See* Local Civil Rule 7.1(d) (explaining "all motions made, other than in a hearing or trial, shall be filed with an accompanying supporting memorandum . . . .").

[5] Despite the Fourth Circuit's holding in *Wilson*, a recent lower court decision has held that foreclosing on property is not debt collection activity. *Moore v. Commonwealth Trs., LLC*, 3:09-CV-

by a deed of trust. Am. Compl. ¶ 18. Accordingly, Plaintiffs have alleged sufficient facts to support their claim that Plaintiffs' mortgage is a "consumer debt."

## 2. Debt Collector

Before the court determines whether Plaintiffs have validly stated claims of violations of the FDCPA, the court must determine next whether the FDCPA is applicable to each of the FDCPA Defendants. The FDCPA prohibits abusive debt collection practices by "debt collectors." *See* 15 U.S.C. § 1692(e). "Debt collectors" include

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Congress targeted situations where natural constraints would fail to inhibit debt collection practices: "Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rpt. No. 95-382, 95th Cong., 1st Sess. Therefore, generally, the FDCPA does not apply to creditors. The Fourth Circuit Court of Appeals has held that law firms and lawyers acting in connection with a foreclosure may qualify as "debt collectors" under the FDCPA. *See Wilson*, 443 F.3d at 375 (holding

---

731, 2010 U.S. Dist. LEXIS 113724, at *9, 2010 WL 4272984, at *4 (E.D. Va. Oct. 25, 2010). In so holding, *Moore* relied in part on *Hulse v. Ocwen Fed. Bank, FSB*, which held that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money. . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). However, in *Wilson*, the Fourth Circuit expressly disagreed with the reasoning in *Hulse*, and concluded that a "'debt' remain[s] a 'debt' even after foreclosure proceedings commenced," and that actions surrounding foreclosure proceedings – including an eviction notice required by statute – can be considered attempts to collect such debts. *Wilson*, 443 F.3d at 376 (citations omitted).

attorneys acting in connection with a foreclosure can be "debt collectors" under the FDCPA).[6]

Here, in their amended complaint, Plaintiffs allege that Defendant STS, Defendant HSB and its attorneys and employees (the Individual Defendants), by handling the underlying foreclosure proceeding in connection with Plaintiffs' property, attempted to collect debt owed Defendant BAC.[7] Am. Compl. ¶ 4. At the outset, the court takes judicial notice of the special proceedings filings by Defendant Salyer and Defendant HSB, on behalf of Defendant STS, in the underlying foreclosure action – and in particular, the "Notice of Hearing Prior to Foreclosure of Deed of Trust" and the "Notice of Foreclosure Sale" – which expressly provide that each is a "COMMUNICATION FROM A DEBT COLLECTOR." STS Am. Ans., Exs. K, O [DE-64.12, 64-16]. Defendant Mandulak contends Plaintiffs have not alleged sufficient facts showing he played a role in the foreclosure action. Individual Defs.' Mem. at 5 [DE-74]. However, Plaintiffs' amended complaint presents sufficient factual allegations to infer Defendant Mandulak may be a debt collector under the Act.

As for Defendant Hooker, the Individual Defendants argue that Defendant Hooker, "a non-attorney employee" of Defendant HSB, "does not handle foreclosures in any facet of the proceeding or by any stretch of the imagination." Individual Defs.' Mem. at 5 [DE-74]. The court observes that the Individual Defendants, in emphasizing that Defendant Hooker is a "non-attorney employee," suggest that an employee of a debt collection company does not fall within the Act's definition of

---

[6] Relying on *Maynard v. Bryan W. Cannon, P.C.*, 650 F. Supp. 2d 1138 (D. Utah 2008), Defendants Salyer and Mandulak, attorneys for Defendant HSB, argue the actions of a law firm and its lawyers in connection with a foreclosure proceeding fall outside of the FDCPA because they are engaged not to collect a debt but to initiate a non-judicial foreclosure by enforcing a security interest. Individual Defs.' Mem. at 5 [DE-74]. However, this argument is foreclosed by *Wilson.*

[7] Plaintiffs do not allege any further facts as to the status of the FDCPA Defendants with the exception of alleging that Plaintiffs sought information regarding the debt owed from Defendant STS and the Individual Defendants. Am. Compl. ¶ 26.

14

"debt collector." This court's research indicates this issue has not been addressed by the Fourth Circuit and its lower courts. However, the majority of federal courts considering this issue have found that employees of debt collection companies can be held personally liable under the FDCPA. *See, e.g., Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435-38 (6th Cir. 2008); *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009) (collecting cases); *but see Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (holding that employees of debt collection company are not "debt collectors"). The decisions of these courts finds support in the Federal Trade Commission's interpretation of the FDCPA's definition of "debt collector," which includes "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another." Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988).

Here, the court takes judicial notice of a document entitled "Appointment of Substitute Trustee," recorded in the Durham County Registry on April 30, 2010 and signed on behalf of Defendant BAC "by its Attorney-in-Fact, [] Deborah N. Hooker, Document Execution Officer for" Defendant HSB. *See* STS Am. Ans., Ex. H [DE-64.9]. Based on this filing, it appears Defendant Hooker had some involvement with the underlying state court action, despite the Individual Defendants' argument to the contrary. The court finds this filing suggests personal involvement by Defendant Hooker so as to raise a plausible inference that she was sufficiently involved in the foreclosure proceedings to constitute a "debt collector" under the FDCPA. *See Kistner*, 518 F.3d at 438 (holding that an individual employee was a "debt collector" based on his specific involvement in debt collection activities); *Albanese v. Portnoff Law Assocs.*, 301 F. Supp. 2d 389 (E.D. Pa. 2004)

15

(holding individual employees who "took affirmative actions" in a debt collection activity were subject to individual liability under the FDCPA).

3.    Violations of the FDCPA

Conduct prohibited by the FDCPA includes harassing, oppressive or abusive conduct (15 U.S.C. § 1962d), the "use of false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1962e), the use of "unfair or unconscionable means" to collect a debt (15 U.S.C. § 1962f) and failure to validate a debt (15 U.S.C. § 1962g) – conduct in which Plaintiffs contend the FDCPA Defendants have engaged. Am. Compl. ¶ 32.

In reviewing the FDCPA count, however, it is evident Plaintiffs have not alleged sufficient facts to meet the basic pleading requirements of Rule 8(a). The FDCPA claim makes only the general allegation that

> Defendants violated sections 1692 (d), (e), (f), (g) of the Act by engaging in harassing and abusive conduct and unfair practices by assessing fees, including attorney fees, handling the foreclosure proceedings. Moreover, Defendants did not provide Plaintiffs the information to validate the debt as required under the Act.

Am. Compl. ¶ 32. The FDCPA allegation standing alone is a clear example of a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and is not a "showing . . . of entitlement to relief." *Id.* at 556 n.3. However, the court is mindful of its duty to liberally construe Plaintiffs' amended complaint and thus considers whether the amended complaint, when viewed in its entirety, states a violation of any of the sections identified above.

a.    *Harassment or Abuse – 15 U.S.C. § 1692d*

Section 1692d prohibits debt collectors from conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." 15 U.S.C. §

16

1692d. *See Dorsey v. Morgan*, 760 F. Supp. 509, 515 (D. Md. 1991) (explaining "[c]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse") (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)). While section 1692d deems certain nonexclusive activities to be *per se* harassing, *Dorsey*, 760 F. Supp. at 515 (citing *Jeter*, 760 F.2d at 1178), Plaintiffs do not allege that the FDCPA Defendants committed any *per se* violations in this case. In fact, Plaintiffs never identify any activity by the FDCPA Defendants allegedly covered by section 1692d but rather rely on the court to craft a plausible claim on Plaintiffs' behalf. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of *pro se* complaints are not, however, without limits . . . . courts [are not required] to conjure up questions never squarely presented to them. District judges are not mind readers.").

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury. Nevertheless, Congress has indicated its desire for the courts to structure the confines of § 1692d." *Jeter*, 760 F.2d at 1179 (citation omitted). Accordingly, "[c]ourts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). Although section 1692d does not limit the types of behavior prohibited, they include use or threats of use of violence, obscene or profane language, coercion, annoying repeated phone calls or phone calls where the caller is not identified, or noncompliant publications of certain debts – "tactics intended to embarrass, upset, or frighten a debtor." *Harvey*, 453 F.3d at 330. Here, Plaintiffs allege no such tactics and in fact, state only that they sought but never received from the FDCPA Defendants information "regarding the owner and holder of the note, the full payment history, the

17

amount of the delinquency, the assessment, rationale and breakdown of attorney fees and other fees tacked onto the amount owed." Am. Comp. ¶ 26. Construing Plaintiffs' complaint liberally, Plaintiffs' allegations imply at most that the harassing activity of the FDCPA Defendants was the initiation of foreclosure proceedings without supporting documentation. Am. Compl. ¶¶ 24, 28.

Plaintiffs' complaint is similar to that considered by the Sixth Circuit in *Harvey*, where the debtor alleged only that the debt collector brought the original state court action without the immediate means to prove the debt owed. *Harvey*, 453 F.3d at 328. The *Harvey* court emphasized that the debtor did not deny owing the debt or allege that the debt collector misstated or misrepresented the debt amount, or failed to undertake a reasonable investigation into whether the debt existed or made false representations. *Id.* at 332. Similarly, here, Plaintiffs' allegations against the FDCPA Defendants, which are limited to a failure to provide substantiating information and "handling the foreclosure proceedings," arguably rest solely on the sufficiency of documentation supporting the underlying state court action. *See* Am. Compl. ¶¶ 4-5, 26. While Plaintiffs allege that Defendant BAC failed to properly credit two mortgage payments, Am. Compl. ¶ 24, Plaintiffs never deny in their amended complaint that they owed Defendant BAC a debt. In fact, Plaintiffs admit to being at least 60 days delinquent on their loan and do not allege that this delinquency was related to the allegedly improper loan servicing committed by Defendant BAC. *Id.* ¶ 18. Furthermore, Plaintiffs' allegation that Defendant BAC failed to consider modifying Plaintiffs' home loan under HAMP suggests Plaintiffs were enduring financial hardship and thus unable to keep their mortgage current. *Id.* ¶ 19. That is, Plaintiffs fail to allege facts indicating the foreclosure action was baseless or that the FDCPA Defendants misrepresented the debt.

Accordingly, the FDCPA Defendants' motions to dismiss are ALLOWED as to Plaintiffs'

18

section 1692d claim. *See Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 925 (E.D. Va. 2006) (holding "[p]laintiff's allegations that [d]efendants violated the FDCPA merely by attempting to collect a disputed debt do not state a claim upon which relief can be granted); *Eichman v. Mann Bracken, LLC*, 689 F. Supp. 2d 1094, 1100-01 (W.D. Wis. 2010) (explaining "to prevail on defendants' motion to dismiss, plaintiff must . . . allege that defendants' [state court claims] are frivolous, based on blatant lies or misrepresent a key fact"); *Popson v. Galloway*, No. 10-77E, 2010 U.S. Dist. LEXIS 75960, *12-15, 2010 WL 2985945, at *5-6 (W.D. Pa. July 27, 2010) (holding plaintiff's allegation that the debt collector "proceeded with the [state court action] without documentation detailing the purchases, payments, interest, and late charges, making it impossible for [p]laintiff to determine whether or not he owed the alleged debt and if it was correctly calculated . . . ." insufficient to state a claim under section 1692d).

      b.    *False or Misleading Representations – 15 U.S.C. § 1692e*

Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of debt." The statute contains sixteen subsections listing types of conduct that are considered false, deceptive, or misleading. Plaintiffs' amended complaint does not allege a violation under any particular subsection. In fact, as already explained in length above, Plaintiffs' allegations against the FDCPA Defendants are limited to the failure of the FDCPA Defendants to provide supporting documentation of the debt and related fees and "handling the foreclosure proceedings."

Plaintiffs have not alleged any facts from which the court could draw a reasonable inference that the FDCPA Defendants made a false representation. *See Beaudett*, 775 F.2d at 1278. Plaintiffs' allegations deal strictly with the manner and means by which proof of the debt was presented by the

19

FDCPA Defendants. *See* Am. Compl. ¶ 26. To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim as "insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e." *Donatelli v. Warmbrodt*, No. 08-1111, 2011 U.S. Dist. LEXIS 69207, at *24, 2011 WL 2580442, at *6 (W.D. Pa. June 28, 2011). *See also Harvey*, 453 F.3d at 330 (dismissing plaintiff's allegation that defendant violated the FDCPA "by filing a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that [defendant] . . . owned the debt" in violation of section 1692e where plaintiff "never denied in her complaint that she owed [defendant] a debt, nor did she claim [defendant] misstated or misrepresented the amount that she owed"); *Popson*, 2010 U.S. Dist. LEXIS 75960, at *12-15, 2010 WL 2985945, at *5-6 (allegations that debt collector filed a state court suit "without documentation detailing the purchases, payments, interest, and late charges, making it impossible for [p]laintiff to determine whether or not he owed the alleged debt and if it was correctly calculated" did not state a claim under section 1692e because "filing of a state court suit . . . is not deceptive in nature" and plaintiff did not deny owing the debt).

Based on the foregoing, Plaintiffs have failed to plead facts to support a violation of section 1692e, and the FDCPA Defendants' motions to dismiss are ALLOWED as to Plaintiffs' section 1692e claim.

    c.    *Unfair or Unconscionable Attempts To Collect the Debt – 15 U.S.C. § 1692f*

The "unfair practices" section of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute does not define "unfair or unconscionable," but it does provide a non-exhaustive list of conduct that

20

violates the section. *See id.* Cognizant that it could not anticipate every improper practice used by debt collectors, Congress enacted section 1692f to catch conduct not otherwise covered by the FDCPA. *See* S. Rep. No. 95-382, at 4 (Aug. 2, 1977) ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."). *See also Albritton v. Sessoms & Rogers, P.A.*, No. 5:09-CV-321-H, 2010 U.S. Dist. LEXIS 78371, at *14-15, 2010 WL 3063639, at *5 (E.D.N.C. Aug. 3, 2010) (explaining a cause of action under section 1692f "is a sort of catch-all, picking up unfair practices that manage to slip by §§ 1692d & 1692e"); *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) ("§ 1692f serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e"). Accordingly, a complaint will be deemed deficient under this provision if it "does not identify any misconduct beyond which [p]laintiffs assert violate other provisions of the FDCPA." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (citation omitted). *Accord Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (explaining there is "a growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA" and collecting cases).

Here, the amended complaint does not identify any additional misconduct to support a section 1692f claim. Indeed, no specific conduct whatsoever is alleged to support this claim. Accordingly, Plaintiffs' failure to allege other conduct that was unfair and unconscionable under section 1692f warrants dismissal of this claim.

21

d. *Validation of Debts – 15 U.S.C. § 1692g*

Subsection 1692g(a) requires a debt collector to provide, in its initial communication with a consumer or within five days of that time, a debt validation notice informing the consumer of his or her right to dispute the validity of the debt. *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996); 15 U.S.C. § 1692g(a). If, upon receipt of this notice, "the consumer notifies the debt collector in writing within the thirty-day period described in [section 1692g(a)] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . ." 15 U.S.C. § 1692g(b).

In the amended complaint, Plaintiffs allege only that the FDCPA Defendants failed to "provide [] the information to validate the debt." Am. Compl. ¶ 32. The factual summary of the amended complaint contains an allegation that Plaintiffs "requested information" from Defendant STS and the Individual Defendants[8] "regarding the owner and holder of the note, the full payment history, the amount of the delinquency, the assessment, rationale and breakdown of attorney fees and other fees tacked onto the amount owed." *See* Am. Compl. ¶ 26. This allegation suggests that Plaintiffs' section 1962g claim concerns subsection (b) – that is, Defendant STS and the Individual Defendants failed to obtain verification of the debt.

While the Act does not define the term "verification" nor explain what constitutes sufficient verification, the Fourth Circuit Court of Appeals has held that

> verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the

---

[8] Plaintiffs do not allege that they sought the requested information from Defendant SBS. Am. Compl. ¶ 26.

22

> debt collector is not required to keep detailed files of the alleged debt . . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Chaudhry*, 174 F.3d at 406 (citations and quotations omitted). Here, Plaintiffs have not pled that they timely notified the FDCPA Defendants in writing that the debt or any portion thereof was disputed, nor have Plaintiffs asserted that the debt was in fact disputed. In fact, as noted previously, Plaintiffs concede that their loan was "at least 60 days delinquent." Am. Compl. ¶ 18. The only suggestion in the record of Plaintiffs' written dispute of the debt is a document entitled "Notice of Removal" – which was recorded by Plaintiffs in the Durham County Registry on June 4, 2010.[9] STS Am. Ans., Ex. M [DE-64.14]. Therein Plaintiffs attempted to terminate the rights provided in the deed of trust of Defendant BAC, the trustee, the substitute trustee and any agents or assigns thereof. STS Am. Ans., Ex. M [DE-64.14 at 2]. While the removal notice includes other nonsensical demands, allegations of fraud and citations to case law outside of the Fourth Circuit Court of Appeals, it also quotes section 1692g(b) and demands that the "Debt Collector[] [] cease all collection activity, re [sic] the alleged account/debt, until Respondent is sent the herein requested verification . . . ." *See* STS Am. Ans., Ex. M at 8 [DE-64.14]. The removal notice further demands that the debt collector provide an original copy of the alleged debt. *Id.*, Ex. M. at 9. The "Certificate of Service" attached to the removal notice indicates Defendant BAC, Defendant HSB and Defendant Hooker were served copies of the removal notice.[10]

---

[9] The Notice of Removal is a public record filed in the Durham County Registry and thus may be considered by court on a 12(b)(6) motion. *See Witthohn*, 164 Fed. Appx. at 396.

[10] Filings by Defendant STS and the Individual Defendant include copies of the removal notice, confirming they too received copies of the removal notice at some point. *See* STS Am. Ans., Ex. M [DE-70.14]; Individual Defs.' Mem., Ex. A [DE-74.1]

23

First, the court finds that the "Notice of Removal" does not constitute an effective verification request as envisioned under section 1692g(b). While the FDCPA is designed to protect consumers, section 1692g is a notice statute, the spirit of which is arguably intended to assist both the debt collector and the debtor. For example, provision (a) specifies the content of the written debt verification notice debt collectors are required to send consumers, and the placement of this notice in the debt collector's communication to the debtor "must not be overshadowed or contradicted by other messages." *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996). *Accord Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991). Similarly, provision (b) serves as a notice to debt collectors by which they must abide <u>only if</u> the consumer requests validation in writing and within a specific time frame. 15 U.S.C. § 1692g(b). A debtor's failure to abide by the requirements of provision (b) "permits the debt collector to pursue debt collection efforts which are not otherwise prohibited by the FDCPA and releases the debt collector from its obligation to provide verification of the debt to the consumer under § 1692g(a)(4)." *Russell v. Absolute Collection Servs.*, No. 1:09-CV-515, 2011 U.S. Dist. LEXIS 61944, at *3-4 (M.D.N.C. Jan. 10, 2011). While the FDCPA exists to protect unsophisticated debtors who cannot be expected to assert their section 1692g rights in legally precise phrases, the exercise of such rights should be done in such a manner so that the debt collector is put on fair notice. Here, Plaintiffs filed a fourteen page document in the Durham County, North Carolina Register of Deeds, the title of which ("Notice of Removal") in no way signifies a verification request. Furthermore, the majority of this notice contains nonsensical demands and rambling allegations, with the verification request buried in the midst of such demands and allegations.

24

Second, even assuming the "Notice of Removal" constitutes a proper verification request, Plaintiffs have not alleged that they disputed the debt within the 30-day period described in 15 U.S.C. § 1692g(a)(3), which would have created affirmative obligations for the FDCPA Defendants under 15 U.S.C. § 1692g(b). Accordingly, Plaintiffs do not state a claim under section 1692(g)(b). *See Ogbin v. GE Money Bank*, No. 10-5651(NLH)(AMD), 2011 U.S. Dist. LEXIS 64735, at *15, 2011 WL 2436651, at *5 (D.N.J. Jun. 13, 2011) (dismissing plaintiffs' section 1692g(b) claim in part because plaintiffs "failed to allege that their dispute was provided within the 30-day window"); *Hargrove v. WMC Mortg. Corp.*, No. 07-2468, 2008 U.S. Dist. LEXIS 67727, at *10, 2008 WL 4056292, at *3 (S.D. Tex. Aug. 29, 2008) (holding plaintiffs failed to state a claim under section 1692g(b) because the amended complaint made no allegation as to whether plaintiffs' "sent their debt dispute letters to [defendant] . . . within a 30-day period after having received a § 1692g(a) notice of debt").

## C.     State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), this court has discretion to decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." In the interest of avoiding "[n]eedless decisions of state law," the Supreme Court has stated that, when "federal claims are dismissed before trial . . . state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting "trial courts enjoy wide latitude in determining whether [] to retain jurisdiction over state claims when all federal claims have been extinguished"). Accordingly, pursuant to the dismissal of Plaintiffs' only claim arising under federal law in the present case, this court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims

25

set forth in Counts II, III, IV, V and VI of the amended complaint. Plaintiffs' state law claims are therefore DISMISSED WITHOUT PREJUDICE.

## V. PLAINTIFFS' MOTION TO DISMISS

Plaintiffs request the court to dismiss Defendant BAC's counterclaim for residential mortgage fraud for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Pls.' Ans. & Mot. Dismiss Def. BAC Countercl. ("Pls.' Mot. Dismiss") at 3 [DE-80]. Defendant BAC did not file a response.

Defendant BAC has counterclaimed in this suit that Plaintiffs' action in filing the "Notice of Removal" violated the North Carolina RMFA. Def. BAC's Ans. & Countercl. ¶¶ 20-25. Defendant BAC, however, has failed to allege any independent jurisdictional grounds for this counterclaim. Upon review of the counterclaim, the court finds neither diversity nor federal question jurisdiction exists over Defendant BAC's counterclaim. Generally, the court's analysis would then turn to determining the status of the counterclaim as "compulsory" or "permissive." *See O'Fay v. Sessoms & Rogers*, P.A., No. 5:08-CV-615-D, 2010 U.S. Dist. LEXIS 104307, at *7 (E.D.N.C. Feb. 9, 2010).

In the present context, however, it is immaterial whether the counterclaim under discussion is considered compulsory or permissive. Even assuming the counterclaim is "compulsory," where the primary claim (here, Plaintiff's FDCPA claim) is dismissed for failure to state a claim, if a compulsory counterclaim is not supported by an independent federal jurisdictional ground, the court, "in its own discretion, [may] dismiss [the counterclaim] after having dismissed the original claim." *Wetherington v. Phillips*, 380 F. Supp. 426, 429 (E.D.N.C. 1974). *Cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice

26

& Procedure § 1414 (3d ed. 2004) (stating "language in . . .[*Gibbs*] indicates that if the court's jurisdiction over the original suit is based on a federal question, then the ancillary counterclaim should be dismissed if the main claim fails to remain in the suit"). Considering the interests of fairness, convenience and economy and the proper function of a federal court, the court concludes, as a matter of discretion, that it should dismiss Defendant BAC's counterclaim without prejudice. As the court does not reach Plaintiff's contention that Defendant BAC's counterclaim is not properly pled, the court DENIES AS MOOT Plaintiff's motion to dismiss the counterclaim pursuant to 12(b)(6).

## VI. CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Amended Complaint pursuant to 12(b)(5) filed by Defendants Deborah N. Hooker and John A. Mandulak [DE-71] is DENIED. The Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendant Substitute Trustee Services, Inc. [DE-61], the Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendant The Law Firm of Hutchens, Senter & Britton, P.A. [DE-62], and the Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendants Deborah N. Hooker, C.T. Salyer and John A. Mandulak [DE-73] are ALLOWED. The Motion to Dismiss Defendant BAC's Counterclaim [DE-80] is DENIED AS MOOT. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 29ᵗʰ day of September, 2011.

*James C. Fox*

JAMES C. FOX
Senior United States District Judge

27